UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| Plaintiff, | ) ) | Civil No. 6:09-CV-314-GFVT |
| V. | ) ) | |
| UNITED STATES OF AMERICA, ET AL., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

Robert Smith is currently incarcerated at the Victorville Federal Correctional Institution, #1 Medium, in Adelanto, California. He has submitted a *pro se* Complaint regarding events occurring during an earlier incarceration in the United States Penitentiary ("USP")-McCreary, in Pine Knot, Kentucky. He claims to have brought this cause as a civil rights action under 42 U.S.C. § 1983 and also as a negligence cause of action "under 28 U.S.C. §§ 2680(a) and (h)," of the Federal Tort Claims Act ("FTCA").

The Court has granted Smith permission to proceed *in forma pauperis* in a separate Order, to which the Plaintiff has filed objections. Also, in response to an earlier Order of this Court, he has recently supplied a missing page of the Complaint and an administrative document going to his use of available administrative remedies. The Court will refer these submissions in its screening of the Complaint today. The screening is in conformity with 28 U.S.C. § 1915A

and *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).[1] For the reasons set forth below, this matter will be dismissed.

## I.

Plaintiff alleges that he was attacked by another inmate, Steven McClarity, as he entered the prison compound yard on July 24, 2008. Correctional Officers purportedly separated the inmates and took them both to the "Special Housing Unit" ("SHU"), where they were separated from each other and the general prison population.

On August 2, 2008, Plaintiff was taken to the SHU's property room, where the personal property from his cell was offered to him. He claims that the property there was only "a fraction" of what he actually had earlier possessed. All of his legal work was missing, and the paperwork of another inmate, named Brennick, was there instead. A correctional officer later reported to Plaintiff that Brennick was responsible for his property being stolen and for the wrong legal documents being seized. He also stated that another correctional officer, named Roberts, had failed to timely secure Plaintiff's property, thus giving Brennick the opportunity to steal the goods.

On September 4, 2008, Plaintiff was released from the SHU. However, on September 13, a similar attack happened, with the result that Plaintiff was again taken to the SHU, and this time, he stayed there until his transfer to his current prison. "Because McClarity, Brennick, Parton and Frye were all part of a prison gang known as 'The Boston Car', Smith was transferred. In other words, the staff at McCreary showed unmistakable preference for

---

[1] A *pro se* pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

individuals involved in gangs." [Complaint, Record No. 2.] Purportedly, those individuals were in punitive SHU for a short period of time but Plaintiff spent ten months in administrative detention at SHU, *i.e.*, until his transfer. He describes the SHU conditions for both as being "tantamount to cruel and unusual punishment."

Smith alleges that the loss of his property and seizure of someone else's property, neither of which was properly investigated, was the result of negligence on the part of Bureau of Prison ("BOP") officials. Plaintiff values the property at $1,999.23 and contends that Roberts' failure to timely secure his personal property "was a blatant act of negligence that can not be refuted." Smith further writes in terms of intentional conduct as well as negligence:

> Because Smith lost his personal property due to Roberts['] negligence, Roberts inflicted additional punishment to Smith within the meaning to [sic] the Eight[h] Amendment. Not only did Roberts inflict emotional distress to Smith, for the loss of personal possessions (personal photos etc), he violated Smith's right to be free from cruel and unusual punishment.

[*Id.* at 10.]

Plaintiff also claims that the warden denied him all of the rights of persons in the general population and interfered with his right of access to the courts by not letting him into the law library for nine months. Additionally, Plaintiff complains that he, who was the victim, was discriminated against while the inmate thieves and attackers were treated better. He suggests that the BOP guards were "in complicity with" the inmate gang members.

In response to this Court's earlier inquiry about Plaintiff's use of the BOP's administrative remedies, the Plaintiff contends both that exhaustion of administrative remedies is not required for a *Bivens* lawsuit and that he exhausted the administrative remedies, as his attachment shows. For relief, Plaintiff demands damages in the amount of $1,999.23 for his lost

property; $1,500.00 per day for the approximate 300 days which he spent in SHU; and punitive damages "as a sanction for the BOP to stop and desist from punishing victims of crimes in federal penal institutions."

## II.

The Plaintiff has named the United States and a federal prison warden as Defendants. This Court, therefore, begins with the United States' immunity from suit based on its status as a sovereign nation. The federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). A corollary to the doctrine of governmental immunity is that, when the United States does waive that immunity and consents to be sued, Congress may define the conditions under which suits will be permitted. *Kendall v. United States*, 107 U.S. 123 (1882).

### A.

As is abundantly clear by now, the jurisdiction for this Court to entertain the *pro se* Plaintiff's claims herein is not actually pursuant to the statute which he cites, 42 U.S.C. § 1983. In Section 1983, Congress has provided for an individual to obtain damages in federal court for unconstitutional actions by any person(s) acting under the authority of State laws. As the persons purportedly violating this Plaintiff's rights are acting under their authority as federal employees, the basis of jurisdiction herein is actually 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead and prove two essential elements. He must show, first, the deprivation of right(s) secured by the

Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Id*. at 397. As both of these components were alleged, this is a classic *Bivens* civil rights action, and the Court will direct the Clerk of the Court to correct the nature of the instant cause of action from its current characterization in the docket.

Before proceeding to the Complaint, however, the Court must determine if the Plaintiff has satisfied a pre-condition to suit in federal court – exhaustion of his administrative remedies. Although Smith argues that exhaustion is not necessary for a prisoner's constitutional claims, the cases he cites were decided prior to the enactment of legislation requiring prisoners to avail themselves of administrative remedies before filing a lawsuit in federal court.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. §1997e to provide as follows:

> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Shortly after its effective date, April 26, 1996, the United States Court of Appeals for the Sixth Circuit held that the language means what it says, expressly requiring exhaustion of administrative remedies before bringing a civil action or appeal. *Wright v. Morris*, 111 F.3d 414 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997). Since then, the Supreme Court of the United States has twice held similarly, that the statute means precisely what it says. *Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."); *Porter v. Nussle*, 534 U.S. 516, 525 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to

5

all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

It is a plaintiff's burden to demonstrate exhaustion of his or her administrative remedies with regard to each claim and each defendant, by either attaching copies of documents therefrom or by describing with particularity the administrative steps he took and responses he or she received in the process. *Brown v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 117 S. Ct. 88 (1998). Unless the record demonstrates that the requirements of §1997e(a) have been met, a district court must dismiss the lawsuit without prejudice. *Id. See also Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) (dismissal is appropriate when the court has given the plaintiff an opportunity to demonstrate exhaustion of administrative remedies and he has failed to do so).

The four-tiered administrative remedy scheme available to inmates who have any gripe about their confinement in Bureau of Prisons institutions is set out in its Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-542.19 (2000). Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may initiate the formal remedy process by filing a written request (a BP-229 form, formerly a BP-9) to the Warden.

If the inmate is not satisfied with the Warden's response, he may appeal (BP-230, formerly BP-10) to the Regional Director for the geographical region in which the inmate's place of confinement is located; for federal prisoners in the Eastern District to Kentucky, the appeal goes to the Mid Atlantic Regional Office of the BOP in Annapolis Junction, Maryland. If the prisoner is not satisfied with the Regional Director's response, the inmate may appeal to the

Office of General Counsel of the BOP, (BP-231, formerly BP-11).  *See* § 542.15 (a)-(b).

In the instant case, the Plaintiff neither alleges nor demonstrates that he pursued "such administrative remedies as are available" in BOP institutions on any topic, much less that he pursued the process through all of the appeals on an issue to the point of exhaustion, *i.e.*, the level of the BOP's General Counsel.  The importance of the grievance system is "to alert prison officials to the problems."  *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999) (partially abrogated in *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 920-21 (2007)).  The Plaintiff here failed to do this.

In the alternative, Plaintiff has also alleged that he exhausted administrative remedies, and he has attached a copy of the BOP's denial of a claim about the loss of his personal property.  As is clear in the document denying his claim, however, he did not allege, nor would it have been appropriate to allege, his *Bivens* claims, because he was alleging negligence.  The document is a letter from the BOP's Regional Counsel referencing "Administrative Tort Claims Number TRT-MXR-200-01296," and it contains the following decision:

> Your claim filed with this office on December 8, 2008, has been considered for administrative settlement under the Federal Tort Claims Act (FTCA) . . . .  You allege staff were *negligent* in securing your personal property after being a victim of an assault.  You claim government liability in the amount of $1,999.23.
>
> A review of your claim was conducted and revealed there is no documented evidence which indicates staff *negligence* or omission on the part of a Bureau of Prisons' employee.  Therefore, your claim is being denied.

[Record No. 7, Attachment No. 2 (emphasis added).]  As is obvious, this response was only about negligence, and an administrative claim alleging negligence does not and cannot constitute exhaustion of the prisoner's civil rights claims.

As for his *Bivens* claims, because the instant Plaintiff did not properly exhaust any of

7

them through the BOP's available administrative remedies, he has failed to satisfy a pre-condition to filing suit in federal court. Therefore, his *Bivens* claims must be dismissed.

**B.**

Plaintiff has also claimed negligence. Congress has waived sovereign immunity for negligence to a limited extent in another statutory scheme, the Federal Tort Claims Act. In it, Congress set out the circumstances under which the United States government consents to be sued in negligence: "for money damages,...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b).

Pursuant to the FTCA, the United States is the only proper defendant, not the individual federal employees. 28 U.S.C. §§ 1346(b), 2401(b), 2679(a); *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990). Therefore, the Defendant warden is entitled to dismissal, and the other Defendant, the United States, remains, as it has been appropriately named. Additionally, exhaustion of the FTCA administrative process is required under the terms of that Act. *See* 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a)(1991); *Tinker-Bey v. Meyers*, 800 F.2d 710 (7th Cir. 1986). Because Plaintiff's exhibit demonstrates that he exhausted the FTCA administrative process, the Court moves on to screening the FTCA claim.

As with other waivers of sovereign immunity, the FTCA's terms are strictly construed, and all ambiguities are resolved in favor of the sovereign. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992). According to the Supreme Court, "[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick*,

404 U.S. 111, 117-18 (1979).

In keeping with these principles, exceptions to the United States' liability, found in 28 U.S.C. § 2680(a)-(n), have been broadly construed. *See, e.g., Lurch v. United States*, 719 F.2d 333, 338 (10th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984). Section 2680 provides, in pertinent part, as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to–
> . . .
> (c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer . . . .

28 U.S.C.A. § 2680(c) (2000). In *Kosak v. United States*, 465 U.S. 848, 854 (1984), the Supreme Court of the United States broadly construed this exception and held that the phrase "arising in respect of" includes any claim "arising out of" the detention of goods, including negligent and intentional conduct, by government employees. *Id.*

Following *Kosak*, appellate courts reached differing results as to whether a BOP corrections officer was included in the "other law enforcement officer" language of the exception. Last year, the Supreme Court decided that issue in favor of the BOP, *i.e.*, the United States is exempted from liability for any negligent loss of goods, based upon a BOP officer being included as "any other law enforcement officer." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, ___, 128 S.Ct. 831, 841 (January 22, 2008).

Consistent with *Ali*'s holding, this Court concludes that the instant Plaintiff's FTCA claim for loss of his personal property is barred by 28 U.S.C. § 2680(c). Because the waiver of liability does not extend to the BOP's detention of goods, this Court lacks subject matter jurisdiction to entertain Smith's loss-of-property claim. Accordingly, the negligence portion of

9

this lawsuit must also be dismissed.

However, as the Supreme Court noted in *Ali*, "for lost property claimants like Petitioner," Congress has provided the following remedy:

> Federal agencies have authority under 31 U.S.C. § 3723(a)(1) to settle certain "claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that is . . . cause by the negligence of an officer or employee of the United States Government acting within the scope of employment" The BOP has settled more than 1,100 such claims in the last three years.

*Ali,* 552 U.S. at ___, 128 S.Ct. at 841, n.7. Similarly, this Court points out to Smith that the remedy offered in the cited statute requires that the claim be presented to the head of the agency within one year after it accrues. *Id.* That is this Plaintiff's only recourse.

## C.

Finally, the Court has considered the Plaintiff's Motion that the Court reconsider assessing him the full $350 filing fee and let him proceed without paying it. He grounds this request in his indigency and his belief that such an assessment deprives indigent plaintiffs of their access to the courts. Smith also claims that he has already been paying on a Seventh Circuit assessment of $400, only half of which has been paid after three years. Further, he alleges that the six-month total income of $300.00, upon which the Court's Order was based, is only borrowed, and was used for replacement of his personal property, medications, and personal hygiene items. He also claims that the Order that he pay the entire fee is unreasonable.

Again, the Plaintiff's reliance on historical case law is misplaced. It is true that the pauper statute used to mean that if the Court found indigency, the indigent litigant could proceed without payment of any filing fee in District Court or the appellate courts. However, that law also changed on April 26, 1996, in another part of Congress' PLRA. Since then, 28 U.S.C. §

1915 has provided that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Thus, Congress mandated that prisoners make full payment of the filing fee. Indigency no longer means that the prisoner-litigant gets to come to court for free.

Moreover, the same statute continues in pertinent part as follows:

. . . The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of–

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C.A. § 1915(b)(1)-(2). Again the statute commands that certain things "shall" be done, by the prisoner, the BOP and the Court.

The Court's Order granting Plaintiff permission to proceed *in forma pauperis* is in conformity with the statute, and the Court finds no grounds for exempting Smith from its requirements. The provisions of the statute protect the first $10.00 of the prisoner's monthly income from seizure, and limit the amount further to only twenty percent (20%) of the monthly income, leaving the prisoner eighty percent (80%) to spend. Nor is it unusual for a litigant to borrow money or skimp on certain pleasures in order to save money to pursue litigation in the federal courts.

**III.**

Accordingly, for the reasons stated above, **IT IS ORDERED** as follows:

1. The Clerk of the Court shall correct the docket of the Court to reflect the true nature of this cause of action, *i.e.*, that it is a civil rights lawsuit pursuant to 28 U.S.C. § 1331 and *Bivens*;

2. Plaintiff's Motion for the Court to Reconsider its assessment of $350, the full amount of the filing fee [Record No. 6], is **DENIED**.

3. This action is **DISMISSED,** *sua sponte*; and that Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named Defendants.

This the 6th day of November, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge