UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

ROBERT SMITH,                        )
                                     )
    Plaintiff,                      )    Civil No. 6:09-CV-314-GFVT
                                     )
V.                                   )
                                     )
                                     )    **AMENDED**
UNITED STATES OF AMERICA, ET AL.,    )    **MEMORANDUM OPINION**
                                     )    **AND ORDER**
    Defendants.                     )

\*\*    \*\*    \*\*    \*\*    \*\*

On September 17, 2009, Robert Smith, an individual currently incarcerated at the Victorville Federal Correctional Institution, #1 Medium, in Adelanto, California, submitted a *pro se* Complaint regarding events occurring during an earlier incarceration in the United States Penitentiary ("USP")-McCreary, in Pine Knot, Kentucky. He claims to have brought this cause as a civil rights action under 42 U.S.C. § 1983 and also as a negligence cause of action "under 28 U.S.C. §§ 2680(a) and (h)," of the Federal Tort Claims Act ("FTCA").

The Court's initial action in this case was to issue an Order directing Smith to supply what appeared to be missing pages to his Complaint and to send copies of documents showing his use of the Federal Bureau of Prisons' administrative remedy program. Plaintiff timely responded, curing the Complaint's deficiency and producing a copy of the Bureau of Prisons' administrative denial of his FTCA claim. The Court will refer to these submissions in its screening of the Complaint. The screening is in conformity with 28 U.S.C. § 1915A and

*McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).[1] For the reasons set forth below, one of Plaintiff's claims will be dismissed and summons will issue on the other.

**I.**

Plaintiff alleges that he was attacked by another inmate, Steven McClarity, as he entered the prison compound yard on July 24, 2008. Correctional Officers purportedly separated the inmates and took them both to the Special Housing Unit ("SHU"), where they were separated from each other and the general prison population.

On August 2, 2008, Plaintiff was taken to the SHU's property room, where the personal property from his cell was offered to him. He claims that the property there was only "a fraction" of what he actually had earlier possessed. All of his legal work was missing, and the paperwork of another inmate, named Brennick, was there instead. A correctional officer later reported to Plaintiff that Inmate Brennick was responsible for his property being stolen and for the wrong legal documents being seized. He also stated that another correctional officer, named Roberts, had failed to timely secure Plaintiff's property, thus giving Brennick the opportunity to steal the goods.

On September 4, 2008, Plaintiff was released from the SHU. However, on September 13th, a similar attack happened, after which Plaintiff was again taken to the SHU. This time, he stayed there until his transfer to his current prison. "Because McClarity, Brennick, Parton and Frye were all part of a prison gang known as 'The Boston Car', Smith was transferred. In other words, the staff at McCreary showed unmistakable preference for individuals involved in

---

[1] A *pro se* pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

gangs." [Complaint, Record No. 2.] Purportedly, those individuals were in punitive SHU for only a short period of time but Plaintiff spent ten months in administrative detention at the SHU, *i.e.*, until he was transferred to his current Bureau of Prison ("BOP") facility. He describes the SHU conditions at USP-McCreary as being "tantamount to cruel and unusual punishment."

Smith alleges that the loss of his property and seizure of someone else's property, neither of which was properly investigated, was the result of negligence on the part of BOP officials, specifying two people, the officer named Roberts and the warden, who failed to train such officers and condoned such conduct. Plaintiff values the property at $1,999.23 and contends that Roberts' failure to timely secure his personal property "was a blatant act of negligence that can not be refuted." Smith further writes in terms of intentional conduct as well as negligence:

> Because Smith lost his personal property due to Roberts negligence, Roberts inflicted additional punishment to Smith within the meaning to [sic] the Eight Amendment. Not only did Roberts inflict emotional distress to Smith, for the loss of personal possessions (personal photos etc), he violated Smith's right to be free from cruel and unusual punishment.

[*Id.* at 10.]

Plaintiff also claims that the warden denied him all of the rights of persons in the general population and interfered with his right of access to the courts by not letting him into the law library for nine months. Additionally, Plaintiff complains that he, who was the victim, was discriminated against while the inmate thieves and attackers were treated better. He suggests that the BOP guards were "in complicity with" the inmate gang members.

In response to this Court's earlier Order asking Plaintiff about his use of the BOP's administrative remedies, the Plaintiff contends both that exhaustion of administrative remedies is not required for a *Bivens* lawsuit and that he exhausted the administrative remedies, as his

attachment shows. His attachment is a May 11, 2009, letter from the BOP denying his FTCA claim for the loss of his property in Claim No. TRT-MXR-200-01296. The BOP official stated that "there is no documented evidence which indicates staff negligence or omission on the part of a Bureau of Prison' employee." For relief in this action, Plaintiff demands damages in the amount of $1,999.23 for the lost personal property; $1,500.00 per day for the almost 300 days which he spent in the SHU; and punitive damages "as a sanction for the BOP to stop and desist from punishing victims of crimes in federal penal institutions."

## II.

The Plaintiff has named the United States as the first Defendant herein. This Court, therefore, begins with the United States' immunity from suit based on its being a sovereign nation. The federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). A corollary to the doctrine of governmental immunity is that when the United States does waive that immunity and consents to be sued, Congress may define the conditions under which suits will be permitted. *Kendall v. United States*, 107 U.S. 123 (1882).

### A.

As to the Plaintiff's negligence claim, Congress has waived sovereign immunity for negligence to a limited extent pursuant to the Federal Tort Claims Act. In the FTCA, Congress set out the circumstances under which the U.S. government consents to be sued "for money damages,...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b).

One requirement of the FTCA is that exhaustion of the FTCA administrative process is required prior to filing a lawsuit. *See* 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a)(1991); *Tinker-Bey v. Meyers*, 800 F.2d 710 (7th Cir. 1986). Plaintiff's letter denying his FTCA claim shows that he successfully completed the FTCA administrative process. Another requirement is that the United States is the only proper defendant, not the individual federal employees. 28 U.S.C. §§ 1346(b), 2401(b), 2679(a); *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990). Therefore, all other named Defendants are entitled to dismissal on this claim, and only the United States, remains as a Defendant with regard to the negligence issue.

As with other waivers of sovereign immunity, the FTCA's terms are strictly construed and all ambiguities are resolved in favor of the sovereign. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992); *Lurch v. United States*, 719 F.2d 333, 338 (10th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984). In the words of the Supreme Court, "[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick*, 404 U.S. 111, 117-18 (1979).

Exceptions to the United States' liability are found in 28 U.S.C. § 2680(a)-(n), with **28 U.S.C. § 2680, Exceptions**, providing in pertinent part, as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to–
> . . .
> > **(c)** Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer . . . .

28 U.S.C.A. § 2680(c) (2000).

Twenty-five years ago, in *Kosak v. United States*, 465 U.S. 848, 854 (1984), the Supreme

5

Court of the United States broadly construed this exception and held that the phrase "arising in respect of" includes any claim "arising out of" the detention of goods, including negligent and intentional conduct, by government employees. *Id.* After *Kosak*, there arose a conflict in the circuits' varying interpretations as to whether a BOP corrections officer was included in the "other law enforcement officer" language of the exception.

Last year, this exception came before the United States Supreme Court again. The Court decided that issue in favor of the BOP, *i.e.*, the United States is exempted from liability for any negligent loss of goods, based upon a BOP officer being included as "any other law enforcement officer." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, ___, 128 S.Ct. 831, 841 (January 22, 2008).

Consistent with *Ali*'s holding, this Court concludes that the instant Plaintiff's FTCA claim for loss of his personal property is barred by 28 U.S.C. § 2680(c). Because the waiver of liability does not extend to the BOP's detention of goods, this Court lacks subject matter jurisdiction to entertain Smith's loss-of-property claim. Accordingly, the negligence claims must be dismissed.

However, as the Supreme Court noted in *Ali*, "for lost property claimants like Petitioner," Congress has provided the following remedy:

> Federal agencies have authority under 31 U.S.C. § 3723(a)(1) to settle certain "claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that is . . . caused by the negligence of an officer or employee of the United States Government acting within the scope of employment" The BOP has settled more than 1,100 such claims in the last three years.

*Ali,* 552 U.S. at ___, 128 S.Ct. at 841, n.7. Similarly, this Court points out to Smith that the remedy offered in the cited statute requires that the claim be presented to the head of the agency

6

within one year after it accrues. *Id.* That is any prisoner-Plaintiff's only recourse against the BOP for a negligent-loss-of-property claim.

**B.**

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead and prove two essential elements. He must show, first, the deprivation of right(s) secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Id*. at 397. As both of these components were alleged, this action is a classic *Bivens* civil rights proceeding.

There is yet another component which is required of a civil rights Plaintiff, an action required even prior to drafting and filing the Complaint: exhaustion of whatever administrative remedies are available. Under the Prison Litigation Reform Act of 1995 ("PLRA"), effective April 24, 1996, Congress amended 42 U.S.C. §1997e to provide as follows:

> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). For inmates, such as Smith, who have a complaint about any unconstitutional or unpleasant aspect of their confinement in Bureau of Prisons institutions, the available administrative procedure which must be exhausted is the four-tiered process set out in the BOP's Administrative Remedy Program, 28 C.F.R. §§ 542.10-542.19 (2000).

However, the federal courts have pointed out that, unlike an FTCA claim, this exhaustion requirement is not a jurisdictional matter but a precondition to suit. The Plaintiff does not need to allege or demonstrate exhaustion initially. Unless the lack of exhaustion is obvious on the face of the Complaint, it is up to the Defendants to raise or waive the issue of exhaustion. *Jones*

*v. Bock*, 549 U.S. 199 (2007); *Cohen v. Corrs. Corp. of Am.*, ____ F.3d ____, Nos. 06-3168, 06-3169, 06-3170, 2008 WL 7181210 (6th Cir. 2009).

In the instant case, the Plaintiff alleges administrative exhaustion of his claims. Because a lack of exhaustion is not obvious from the face of the complaint, the Court will issue summons and require an Answer from the two individuals who purportedly violated Smith's Constitutional rights. The Court construes these Defendants to be U.S.P. McCreary's warden and Officer Roberts. Pursuant to Federal Rule of Civil Procedure 4(m):

> Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m) (2007). Plaintiff is on notice that if any John Doe defendants are not named and served within 120 days, then the claims against said John Doe defendants shall be dismissed pursuant to the terms of Federal Rule of Civil Procedure 4(m).

As Smith has been granted *pauper* status, an Officer of the Court will serve process on his behalf pursuant to Fed. R. Civ. P. 4(c)(2) and 28 U.S.C. § 1915(d). The Clerk's Office and the Office of the United States Marshal ("USM Office"), therefore, will be directed to serve the summons and Complaint as set forth below.

### III.

Accordingly, for the reasons stated above, **IT IS ORDERED** as follows:

1. The Defendants in this action are USP-McCreary's Warden and its Officer Roberts, both located at the prison in Pine Knot, Kentucky.

     2.     A Deputy Clerk of the Court shall prepare the documents necessary for service of process upon the following USP-McCreary Defendants, *in both their individual and official capacities*:

          a.     the Warden;

          b.     the Officer named Roberts;

     3.     For each Defendant, the Deputy Clerk in Lexington shall prepare a "Service Packet" consisting of the following documents:

          a.     the necessary completed summons forms, pursuant to FED. R. CIV. P. 4;

          b.     the Complaint and all attachments [Record No. 2];

          c.     this Order; and

          d.     a completed USM Form 285.

If the Clerk is unable to fully and accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

     4.     Additionally, the Clerk of the Court shall make three sets of copies of the above-described documents, each set containing the following

          a.     copies of all completed summons forms issued for

               the Defendants;

          b.     copies of all completed USM Forms 285;

          c.     one copy of the Complaint and all attachments [Record No. 2]; and

          d.     one copy of this Order.

     5.     Service of process on each Defendant shall be directed as follows:

          a.     Service upon Defendant Roberts shall be made by providing the USM Office in Lexington, Kentucky with a Service Packet to be personally

>  served upon him at USP-McCreary, in Pine Knot, Kentucky, through arrangement with the Federal Bureau of Prisons.
>
> b. Service upon the Defendant Warden shall be made by providing the USM Office in Lexington, Kentucky with a Service Packet to be personally served upon the warden at USP-McCreary, in Pine Knot, Kentucky, through arrangement with the Federal Bureau of Prisons.

6. Service of the named Defendants must be completed by serving the copies described in the above paragraph (4) *by certified or registered mail* to:

> a. one set of the copies to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;
>
> b. one set to the Office of the Attorney General of the United States in Washington, D.C.; and
>
> c. one set to the Office of the Federal Bureau of Prisons in Washington, D.C.

7. The Lexington Deputy Clerk shall hand-deliver the Service Packets for each identified Defendant and the three sets of copies to the USM Office in Lexington, Kentucky, and shall obtain a delivery receipt from the USM Office.

The Deputy Clerk shall enter the delivery receipt into the record and note in the docket the date that the Service Packets and copies was delivered to the USM Office.

8. The USM Office shall serve a Service Packet upon each identified Defendant in the manner described in Step 5, above, and shall serve the three sets of copies in the manner described in Step 6, above.

The USM Office is responsible for ensuring that each Defendant is successfully served with process. In the event that an attempt at service upon a Defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

9. Within forty days of the date of entry of this Order, the USM Office shall send a Service Report to the Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service has been accomplished with respect to each identified Defendant.

> a. For each set to be served by certified mail, the Service Report shall include:
> i. a copy of the green card showing proof of service; or
> ii. a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.
>
> b. For each Defendant to be personally served, the Service Report shall indicate:
> i. that the Defendant was successfully served personally, or
> ii. a statement explaining what efforts are being taken to locate the Defendant and accomplish personal service.

10. The Plaintiff shall immediately advise the Clerk's Office of any change in his current mailing address. *Failure to do so may result in dismissal of this case*.

11. The Plaintiff must communicate with the Court *solely* through notices or motions filed with the Pikeville Clerk's Office. *The Court will disregard correspondence sent directly to the judge's chambers.*

12. With every notice or motion filed with the Court, the Plaintiff *must*:

> a. mail a copy to each Defendant (or his or her attorney); and
>
> b. at the end of the notice or motion, certify that he has mailed a copy to each Defendant (or his or her attorney) and the date on which this was done. *The Court will disregard any notice or motion which does not include this certification.*

This the 27th day of January, 2010.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

11